IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **COREY KNOX,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| V. | ) | Civil No. **03-446-CJP**[1] |
| | ) | |
| **CPT. LASHBROOK, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

**PROUD, Magistrate Judge:**

Plaintiff Corey Knox, an inmate in the custody of the Illinois Department of Corrections, housed during all relevant times at Menard Correctional Center, brought the above-captioned civil rights action pursuant to 42 U.S.C. § 1983.  **(Doc. 1).**  Plaintiff alleges that the defendant correctional officers, Jacqueline Lashbrook, Denny Bryant, Daniel Dunn, George Welborn, Jeffery Richelman, Kenneth Turner and  Jack Ashby, used excessive force and cruel and unusual punishment against him, in violation of the Eighth Amendment.  **(Docs. 1 and 50).**  After the parties waived their respective demands for trial by jury, a bench trial was conducted.  **(Doc. 44).** At the conclusion of all the evidence, the Court took the case under advisement and the parties were given an opportunity to file motions and briefs.  Pursuant to Federal Rule of Civil Procedure 52(c), the defendants moved for judgment as a matter of law.  **(Doc. 75).**  Plaintiff did not file any motion or brief, nor did he file a response to the defendants' motion.

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), upon the consent of all parties, U.S. District Judge J. Phil Gilbert referred this action to the undersigned magistrate judge for all proceedings and entry of judgment.  **(Docs. 43 and 45).**

**Summation of the Evidence**

It is undisputed that on the date in question, August 1, 2001, plaintiff Knox was housed in cell 218 of North cell house at Menard, which is a segregation unit. **(Doc. 66, p. 41).** Plaintiff admittedly threw a container of well-used toilet water from his cell onto Correctional Officer ("C/O") James Taylor. **(Doc. 66, pp. 17 and 41).** C/O Taylor called defendant Sergeant Dunn to report the incident. **(Doc. 66, p. 17).** Dunn determined that the area needed to be cleaned. **(Doc. 74, p. 73).**

By plaintiff's account, defendants Dunn, Ashby, Lashbrook and Welborn all arrived at his cell and requested that he "cuff-up" so they could remove him and clean the cell. **(Doc. 66, P. 41).** Dunn and Welborn then escorted plaintiff to the shower area and, according to plaintiff, cuffed his hands behind him at shoulder height, and left him for three hours. **(Doc. 66, p. 42 (plaintiff physically demonstrated his position for the Court)).** In contrast, defendants Dunn and Welborn described plaintiff's arms being cuffed behind him, about waist high, in a manner that allowed plaintiff to stand or sit on a nearby table. **(Doc. 66, pp. 20-21 and 23; and Doc. 74, p. 74).** Defendant Ashby, the only other witness to testify that he saw plaintiff cuffed in the shower, described plaintiff as sitting on a table with his arms cuffed directly behind him, in no apparent distress or pain. **(Doc. 66, p. 13).**

Plaintiff testified that while in the shower he yelled at other inmates, asking them to get a guard to uncuff him from the position he was in, all to no avail. **(Doc. 66, p. 42).** Plaintiff's pleas for assistance were generally corroborated by inmates Robert Boyd and Antwon Mitchell. **(Doc. 66, pp. 33 and 39).** According to plaintiff, he stayed cuffed in the shower for approximately three hours. **(Doc. 66, p. 42).** Inmate Boyd estimated plaintiff was cuffed in the

shower for two-to-three hours, and inmate James Scott testified that he did not recall exactly how long plaintiff was in the shower, but it was longer than the usual 10 minutes inmates are allotted to shower.  **(Doc. 66, pp. 33 and 51).**   Lieutenant Lashbrook recounted leaving plaintiff's cell to supervise the "yard lines" exiting the cell house, and then returning to the shower area during the time plaintiff's cell was being stripped and cleaned.  **(Doc. 66, pp. 26).**   According to Lashbrook, plaintiff did not appear to be in any apparent discomfort.  **(Doc. 66, p. 29).**  Defendant Ashbrook testified that it typically takes 10-15 minutes to strip a cell, but it can take longer if something like an inmate count is occurring at the same time.  **(Doc. 66, p. 13).**

      According to plaintiff, when defendants Lashbrook, Bryant, Turner, Richelman, Welborn and Ashby eventually returned, they placed a pillowcase over his head, dropped him on his head, kicked and punched him, and then carried him down the gallery to his cell, where they again dropped, kicked and punched him.  **(Doc. 66, pp. 42-44).**  All told, plaintiff estimated he was kicked and punched for about one or two minutes.  **(Doc. 66, p. 44).**   Defendants Ashby, Welborn, Lashbrook, Turner, Richelman and Dunn explained that plaintiff was spitting on the officers and refusing to walk, so a pillow case was placed on plaintiff's head and he was carried back to his cell.  **(Doc. 66, pp. 9, 14-15, 21, 28 and 56-57; and Doc. 74, pp. 73-74).**  According to Ashby, Welborn, Lashbrook, Turner, Richelman and Dunn, plaintiff was kicking and screaming as he was carried, but plaintiff was not punched, kicked or dropped.  **(Doc. 66, pp. 14, 22-24, 30 and 57-58; and Doc. 74, p. 75).**  Defendant C/O Bryant had no recollection of the incident at issue, but he denies ever kicking or punching plaintiff.  **(Doc. 66, p. 55).**

      Inmate Boyd, who was celled in the gallery above where plaintiff was, admitted he could not see any of the events at issue, but he claims to have heard plaintiff yelling that he could not

3

breathe and needed a nurse, which Boyd attributed to plaintiff having been maced (which, by plaintiff's account did not occur).  **(Doc. 66, pp. 33-34).**  Inmate Antwon Mitchell generally recalled plaintiff being dragged down the gallery with a pillow case on his head.  **(Doc. 66, p. 38-39).**  Inmate David Morris, responding to a series of leading questions from plaintiff, affirmed that he saw plaintiff being dragged down the gallery, while being kicked and punched, but Morris could not recall any details.  **(Doc. 66, p. 48).**  Morris estimated the assault took approximately 10 minutes.  **(Doc. 66, p. 49).**  Similarly, inmate James Scott recounted plaintiff, with a pillow case over his head, being dragged down the gallery as unspecified correctional officers beat him.  **(Doc. 66, p. 50).**  Inmate Gabriel Hayes describe seeing correctional officers dragging plaintiff, who had a pillow case on his head and was saying he could not breath; the officers were "wrestling" and "tussling" with plaintiff, but not hitting him.  **(Doc. 74, pp. 77-78).**

Inmate William Carr somehow melded events in his mind and described plaintiff being maced, and being taken by defendants Ashby and Lashbrook, and "C/O Hillman," to the shower with a pillow case on his head.  **(Doc. 74, pp. 84-85).**  Inmate Mason Williams testified to a similarly mixed-up version of events. **(Doc. 74, pp. 87-88).**  Inmates Alan Martin and Paul Henderson was called to testify, but they had no recollection or relevant testimony.  **(Doc. 66, pp. 60-61; and Doc. 74, pp. 79-81).**  Lieutenant Eva Marie Moore was called to testify, but she also had  had no recollection or relevant testimony.  **(Doc. 74, pp. 68-70).**

Relative to claimed damages, plaintiff Knox testified that approximately 30 minutes later he was taken to the Health Care Unit for a wrist injury, although he also incurred a "small knot" on his head, for which he was given an ice pack.  **(Doc. 66, pp. 43-45).**  Medical records

submitted by plaintiff and defendant reflect he was seen at approximately 11:00 a.m. for superficial injuries on both wrists– attributed to handcuffs– sustained at approximately 10:15 a.m. **(Plaintiff's Exhibit 1).** Plaintiff apparently refused treatment. **(Plaintiff's Exhibit 1).** A psychiatric exam was deemed warranted; plaintiff was found to be combative, angry and unpredictable. **(Defendants' exhibit 1).** Lieutenant Ashby acknowledged plaintiff had "a little mark" on his wrist, and Lieutenant Lashbrook recalled plaintiff saying something about a wrist injury as he was being taken to the Health Care Unit. **(Doc. 66, pp. 10 and 30).**

## Findings of Fact

Having reviewed all of the evidence and adjudged each witness's credibility, the Court makes the following essential findings of fact.

Defendants Dunn and Welborn handcuffed plaintiff in the shower area with his hands behind him, approximately waist high, so that plaintiff was able to stand or sit on a nearby table. Plaintiff remained in that position for approximately three hours. Plaintiff was uncomfortable and yelled at other inmates in an attempt to get a guard to release him from that position, all to no avail. However, there is no evidence that word of plaintiff's discomfort reached any of the defendants, and those who did observe plaintiff did not perceive that he was in any sort of pain or distress.

When defendants Lashbrook, Bryant, Turner, Richelman, Welborn and Ashby eventually returned, they placed a pillowcase over plaintiff's head because he was spitting at them. Plaintiff could obviously breath through the pillow case because, by all accounts, he was yelling; moreover, plaintiff himself did not complain that he could not breath. Lashbrook, Bryant, Turner, Richelman, Welborn and Ashby "carried" plaintiff down the gallery to his cell because

he was kicking and refusing to walk. The Court understands the defendants' use of the term "carried" to include what was described by several inmate witnesses as "dragging," which undoubtedly included a certain degree of wrestling and tussling– as inmate Hayes described it.

The Court does not conclude that defendants Lashbrook, Bryant, Turner, Richelman, Welborn and Ashby specifically kicked and/or punched plaintiff, as even by plaintiff's own account he incurred only a "small knot" on his head, as well as superficial marks on his wrists from the handcuffs.

## Applicable Procedural and Legal Standards

As a preliminary matter, the Court notes that the defendants' motion for judgment as a matter of law under Federal Rule of Civil Procedure 52(c) is procedurally misplaced. Federal Rule of Civil Procedure 52(c) applies to non-jury trials where a party has been fully heard on an issue and a decision is being rendered on *partial* findings. In this case, for logistical reasons and without objection from the parties, witnesses were heard out of order, so the usual clear demarcation between plaintiff's case and the defendants' case was not present. The Court received all of the evidence and all parties were fully heard before the defendants moved for judgment as a matter of law.

The Court considers Federal Rule of Civil Procedure Rule 52(a) to be the proper procedural mechanism. Rule 52(a) applies when all parties have been fully heard on the merits of the case. The procedural confusion is understandable, given that plaintiff's and the defendants' witnesses were called out of order (without objection) and there was no clear demarcation between plaintiff's case in chief and the defense case. In any event, both Rules 52(a) and 52(c) require the Court to make credibility determinations, findings of fact and

conclusions of law, and in this situation the Court's analysis would be virtually identical under either rule.

In a civil rights suit such as this, 42 U.S.C. § 1983 requires a plaintiff to show "(1) an action taken under color of law (2) which violates his federal constitutional rights." **Cunningham v. Southlake Ctr. for Mental Health, Inc., 924 F.2d 106, 107 (7th Cir. 1991).** *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir.1983), stresses that "Section 1983 creates a cause of action based upon personal liability and predicated upon fault. An individual cannot be held liable in a [Section] 1983 action unless he caused or participated in an alleged constitutional deprivation." **See also McBride v. Soos, 679 F.2d 1223, 1227 (7th Cir.1982).** Accordingly, liability under Section 1983 cannot be based on the doctrine of *respondeat superior*. **See Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001).** "However, a defendant's direct participation in the deprivation is not required. An official satisfies the personal responsibility requirement of [S]ection 1983 if she acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at her direction or with her knowledge and consent." **Rascon v. Hardiman, 803 F.2d 269, 273-274 (7th Cir. 1986).**

Drawing from *Hudson v. McMillian*, 503 U.S. 1 (1992), in *Outlaw v. Newkirk*, 259 F.3d 833 (7th Cir. 2001), the Court of Appeals for the Seventh Circuit summarizes the legal principles applicable to excessive force claims:

> The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits the "unnecessary and wanton infliction of pain" on prisoners. In cases involving the claimed use of excessive force, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." In conducting this inquiry, a court must examine a variety of factors, including "the need for an application of force,

> the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." With regard to the last of these factors, while a plaintiff need not demonstrate a significant injury to state a claim for excessive force under the Eighth Amendment, "a claim ordinarily cannot be predicated on a de minimis use of physical force." Indeed, "the Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Therefore, not every "malevolent touch by a prison guard" gives rise to a federal cause of action, even if the use of force in question "may later seem unnecessary in the peace of a judge's chambers."

***Outlaw*, 259 F.3d at 837-838 (internal citations omitted).**

### Analysis

Plaintiff contends that the manner in which he was handcuffed in the shower, and the duration of that restraint amounts to excessive force and/or cruel and unusual force. The evidence at trial implicated only defendants Dunn and Welborn, who took plaintiff from his cell and to the shower area so that plaintiff's cell could be stripped and cleaned. Plaintiff was handcuffed with his hands behind him, waist high, so that plaintiff was able to stand or sit on a nearby table. There is no dispute that plaintiff's cell needed to be cleaned and/or searched, as he admittedly assaulted C/O Taylor with urine and feces and made a mess of the area. Therefore moving plaintiff to the shower area and temporarily restraining him after the assault was a warranted means of restoring and maintaining discipline and order. Cuffing plaintiff's arms behind his back in a manner that allowed him some ability to move about or sit is excessive or cruel and unusual. There was evidence that it typically only takes 10-15 minutes to strip a cell, but it could take longer if something else was occurring in the cellhouse. In this situation, inmates were in the process of being lined up and released into the recreation yard, so plaintiff was ultimately held in the shower area for approximately three hours.

Because plaintiff was in a position where he could and did alternate between standing and sitting, and his arms were not being held up, but rather could be relieved of all weight, the fact that he stayed confined for three hours does not alter the Court's conclusion that his restraint did not amount to excessive force or cruel and unusual punishment. From the Court's perspective, it is most telling that at the end of plaintiff's ordeal he only exhibited a small mark on his wrists from the handcuffs, and he did not complain about muscle strain, or anything of that nature. The force and/or restraint used and the resulting discomfort were de minimis. In addition, there is no evidence that word of plaintiff's discomfort reached any of the defendants, and those who did observe plaintiff did not perceive that he was in any sort of pain or distress.

There was no evidence as to exactly which of the defendants placed the pillow case over plaintiff's head. However, defendants Lashbrook, Bryant, Turner, Richelman, Welborn and Ashby were all present and involved in the process to some degree. Placing a pillowcase over plaintiff's head for a brief period of time was clearly reasonable and warranted, in that plaintiff was spitting on the guards who were trying to return him to his cell. There was nothing to suggest that the defendants acted for any other purpose than to protect themselves from the spitting. In addition, at trial, plaintiff did not complain that he could not breathe, and it was undisputed that plaintiff was yelling the whole time the pillow case was on his head, thereby demonstrating that he could breathe. Again, any discomfort was de minimis, and plaintiff did not allege any injury. Therefore, the defendants did not violate the Eighth Amendment by briefly placing a pillow case on plaintiff's head.

Insofar as plaintiff was "carried" by defendants Lashbrook, Bryant, Turner, Richelman, Welborn and Ashby, this means of transport was reasonable and warranted because plaintiff was

kicking at the defendants and refusing to walk back to his cell.  Any associated wrestling, tussling, dragging, dropping, bumping and the like could be expected and is merely a result of plaintiff's kicking and refusal to walk on his own.  Furthermore, by plaintiff's own account, he sustained only a small knot on his head.

Even considering the entire incident as a whole, the defendants' treatment of plaintiff does not amount to excessive force or cruel and unusual punishment.  There is nothing to suggest that the defendants intended to accomplish anything but to remove plaintiff from his cell after he assaulted C/O Taylor, clean the cell and search it, and return plaintiff to the cell.  The defendants' actions do not suggest deliberate indifference, and plaintiff failed to actually allege any improper motivation on their part.  And, again, all of plaintiff's discomfort and his very minor injuries were a result of his own recalcitrant behavior.  Plaintiff has clearly failed to establish an Eighth Amendment violation.

**IT IS THEREFORE ORDERED**, for the aforestated reasons, defendants Jacqueline Lashbrook, Denny Bryant, Daniel Dunn, George Welborn, Jeffery Richelman, Kenneth Turner and  Jack Ashby's motion for judgment in their favor **(Doc. 75)** is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter final judgment in favor of  defendants Jacqueline Lashbrook, Denny Bryant, Daniel Dunn, George Welborn, Jeffery Richelman, Kenneth Turner and  Jack Ashby, and against plaintiff Corey Knox.

**IT IS SO ORDERED.**

**DATED: September 14, 2006**

s/ Clifford J. Proud
CLIFFORD J. PROUD
U. S. MAGISTRATE JUDGE